UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TANESHIA G.[1] O/B/O K.T.D.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

20-CV-6087 (JLS)



---

### DECISION AND ORDER

    Plaintiff Taneshia G.[2] brought this action under the Social Security Act ("the Act") on behalf of the claimant, K.T.D., a minor child under 18 years of age. She seeks review of the determination by the Commissioner of Social Security (the "Commissioner") that K.T.D. was not disabled. Dkt. 1. Taneshia G. moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 11. Taneshia G. replied. Dkt. 13.

    As set forth below, the Court grants Taneshia G.'s motion in part and denies the Commissioner's cross-motion.

---

[1] The Court recognizes variations throughout the record in the spelling of Plaintiff's name and adopts the spelling from the administrative proceedings.

[2] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Taneshia G. by first name and last initial.

## PROCEDURAL HISTORY

On June 20, 2016, Taneshia G. filed an application for Supplemental Security Income ("SSI") on behalf of K.T.D., alleging disability beginning June 15, 2015. Dkt. 9-1, at 1. The Social Security Administration initially denied her claims on March 25, 2016. Dkt. 4, at 15. Taneshia G. then filed a written request for a hearing on August 12, 2016, which occurred before an Administrative Law Judge ("ALJ") on November 30, 2018. Dkt. 9-1, at 1. The ALJ issued an unfavorable decision on December 19, 2018, confirming that K.T.D. was not disabled. Tr. 13-22.[3] The Appeals Council denied Taneshia G.'s request for review on December 6, 2019. Tr. 1-3. Taneshia G. then commenced this action. Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second,

---

[3] All filings at Dkt. 7 are the transcript of proceedings before the Social Security Administration. All references to Dkt. 7 are denoted "Tr. ___."

2

the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. <u>Disability Determination</u>

A child under 18 is disabled under Section 1614(a)(3)(C)(i) of the Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(3)(C)(i).

3

The ALJ follows a three-step process to evaluate whether a child is entitled to SSI benefits:

1. First, the child must not be engaged in substantial gainful activity, defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b).

2. Second, the child must have a medically determinable impairment(s) that is severe — that is, it causes more than minimal functional limitations.

3. Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations.

*Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009) (quoting 20 C.F.R. § 416.924).

To determine whether an impairment or combination of impairments functionally equals one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). That assessment compares the child's performance in each domain with the typical functioning of a child of the same age without impairment. *Id.* § 416.926a(b). The child's impairment is of listing-level severity if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether limitations are "marked" or "extreme," the ALJ considers functional limitations that result from all

4

impairments—including impairments that have been deemed not severe—and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

## DISCUSSION

### I. The ALJ's decision

The ALJ analyzed K.T.D.'s claims by applying the three-step process outlined above. The ALJ did not explicitly note K.T.D.'s age and birth date, but it is clear from his decision that she was school-aged and that he applied the guidelines accordingly.[4]

At step one, the ALJ found that K.T.D. had not engaged in substantial gainful activity since June 20, 2016. Tr. 16. At step two, the ALJ determined that K.T.D. had the medically determinable impairments of "attention deficit hyperactivity disorder (ADHD) and depressive disorder or grief reaction." *Id.* But the ALJ found that these impairments constituted no more than a slight abnormality that caused minimal functional limitations—and, therefore, K.T.D. did

---

[4] According to Taneshia G.'s brief, K.T.D. was born on April 6, 2009. Dkt. 9-1, at 3. At the time of the hearing, she was nine years old. *Id.*

5

not have a severe impairment or combination of impairments. *Id.* Because the ALJ determined that K.T.D. did not suffer from any severe impairment, he did not move on to step three of the analysis.

The ALJ followed a two-step process to consider K.T.D.'s symptoms and evaluate whether (1) there was an underlying medically determinable physical or mental impairment that could be expected to produce her symptoms, and (2) the intensity, persistence, and limiting effects of her symptoms interfered with her functioning. *Id.* at 17. He determined that while "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms[,] . . . the statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 21.

## II. Analysis

Plaintiff argues that the ALJ failed in his duty to develop the record, and that Appeals Council improperly rejected "new and material evidence that undermined the ALJ's findings." Dkt. Item 9-1 at 1. The Court agrees and, because these errors were to Taneshia G.'s prejudice, remands the matter for consideration of new evidence.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d

34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination").

An ALJ evaluating a child's disability claim must consider evidence from nonmedical sources, including parents and school employees. *See* 20 C.F.R. § 416.924a(a)(2). Such evidence includes "teacher questionnaires, teacher checklists, group achievement testing, and report cards." *Id.* § 416.924a(b)(7)(ii). The Commissioner "will ask for any reports that the school may have that show the results of formal testing or that describe any special education instruction or services . . . or any accommodations." *Id.* § 416.924a(a)(2)(iii).

Here, the ALJ based his disability determination on three pieces of opinion evidence: two medical source opinions and one educational source. Tr. 19-20. The ALJ gave significant weight to the consultative opinion of Dr. Yu-Ying Lin, dated August 1, 2016, citing the opinion's consistency with pediatric records from Strong Memorial Hospital that indicated K.T.D.'s ADHD was well-controlled with medication. *Id.* at 20. Dr. A. Chapman gave a consultative opinion on August 5, 2016, based on a review of K.T.D.'s medical record to that date. *Id.* at 320-28. The ALJ afforded this opinion partial weight because he found the rest of the record did not support Dr. Chapman's finding that K.T.D. had less than marked limitations in attending and completing tasks and interacting and relating with others. *Id.* at 20.

7

And the ALJ gave some weight to the teacher questionnaire from November 29, 2018 completed by Mathilde Perrier. *Id.* The ALJ declined to give more weight to Ms. Perrier's evaluation because Ms. Perrier knew K.T.D. for a short period of time, and there was little additional educational evidence with which to compare the evaluation. *Id.* at 21. K.T.D. was in fourth grade at the time of the hearing, but Ms. Perrier's teacher questionnaire was the only educational evidence in the record.

The lack of an educational record was obvious and significant, and the ALJ should have addressed the issue before making his decision. *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)); *see also Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 425 (W.D.N.Y. 2019) (remanding where the ALJ failed to develop the record to include a year of treatment notes for the claimant's ADHD). This error warrants remand.

The Appeals Council is obligated to consider evidence submitted by a claimant after the ALJ's decision if the evidence is new, material, and "relates to the period on or before the date of the hearing decision." 20 C.F.R. § 416.1470(a)(5). Evidence is "material" if it relates to the time period of alleged disability and there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide [a] claimant's application differently." *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991).

New evidence "submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez*, 77 F.3d at 45. The Court then

must review the entire administrative record—including the new evidence—to determine if substantial evidence supports the ALJ's decision. *Id.* at 46; *see also* 42 U.S.C. § 405(g). On this record, remand is necessary for the ALJ to consider the entire record in context.

For example, the new evidence Plaintiff submitted to the Appeals Council included 144 pages of medical records from Strong Pediatrics from January 31, 2017 through October 16, 2018. Tr. 2. These records contained information that directly contradicted the ALJ's conclusions. More specifically, the ALJ concluded that "[d]espite allegations of counseling at school and bereavement counseling at home, there [wa]s no evidence" that K.T.D. had received such treatment. *Id.* at 22. Several treatment reports from the pediatric medical records not submitted to the ALJ refute the ALJ's conclusion and document that K.T.D. received weekly counseling at home, as well as at school. *Id.* at 90, 93, 155.

The ALJ also stated that K.T.D.'s "medication dose for Concerta 27 mg ha[d] not changed, demonstrating stability in her ADHD." *Id.* at 22. Again, records from Strong Pediatrics contradict the ALJ's statement. During an October 16, 2018 examination of K.T.D. at Strong Pediatrics, K.T.D.'s grandmother reported that K.T.D. continued to have issues completing schoolwork and controlling her emotions, and insisted that K.T.D.'s "medication [wa]s not working well." *Id.* at 154. The treatment plan from that visit instructed K.T.D. to "increase Concerta to 36 mg daily" from 27 mg daily. *Id.* at 156.

The newly submitted records also contained 115 pages of educational records from August 11, 2014 through September 27, 2018. *Id.* at 2. These records, too, contradicted the ALJ's conclusions. For example, the ALJ stated that "there [we]re few specific and particular instances of [K.T.D.]'s misbehavior, distractibility, and poor attention[,]" but the new records document several such instances. *Id.* at 21.

Vanderbilt Assessments from K.T.D.'s second, third, and fourth grade teachers document K.T.D.'s trouble focusing. Tr. 176, 208-09, 219-20. K.T.D.'s second grade teacher observed in his February 3, 2017 assessment that she "ha[d] severe attention problems" and was performing "well below grade level." *Id.* at 220. The assessment included a section entitled "performance," in which teachers could scale the child's abilities in eight categories broadly covering in-classroom functioning.[5] *Id.* at 176, 208, 219. K.T.D.'s second grade teacher characterized her performance in every category on the highest end, as either "(4) somewhat of a problem" or "(5) problematic" out of five. *Id.* at 219. K.T.D.'s third grade teacher found that K.T.D.'s performance was "problematic" in every category. *Id.* at 208. She further observed that K.T.D. had "a lot of difficulty maintaining focus and concentration" and, as a result, had "difficulty completing school work [sic]." *Id.* at 209. K.T.D.'s fourth grade teacher provided a similar evaluation and indicated

---

[5] The categories on this chart include reading, mathematics, written expression, relationship with peers, following directions, disrupting class, assignment completion and organizational skills. *Id.* at 176, 208, 219. Teachers rated these skills on a scale from 1-5, with (1) being excellent, (2) above average, (3) average, (4) somewhat of a problem, and (5) problematic. *Id.*

K.T.D.'s performance in each category was either "somewhat of a problem" or "problematic." *Id.* at 176.

## CONCLUSION

For the above reasons, this Court GRANTS Plaintiff's motion in part (Dkt. 9) and DENIES the Commissioner's cross-motion (Dkt. 11). The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings in which the ALJ considers the new evidence in the record.

SO ORDERED.

Dated:   January 14, 2022
         Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE